United States District Court
Southern District of Texas
**ENTERED**
October 09, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Malik Amusat, *Plaintiff*, | § § § | |
| v. | § | Civil Action H-25-4350 |
| Santander Consumer USA Inc., *Defendant*. | § § § | |

## MEMORANDUM AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 29. Pending before the court is Defendant Santander Consumer USA Inc.'s Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 34. The court recommends that the Motion to Dismiss be **GRANTED in part**. The court recommends that Plaintiff's sole federal cause of action be **DISMISSED with prejudice** under Rule 12(b)(6). The court further recommends that Plaintiff's state law claims be **DISMISSED without prejudice**.

### *1. Background Facts and Procedural Posture*

In September 2025, Plaintiff Malik Amusat sued Santander in federal court, alleging various federal and Texas state causes of action pertaining to his used car loan. ECF No. 1. Santander moved to dismiss Amusat's original complaint for failure to state a claim. ECF No. 9. In response to the motion, Amusat requested leave to amend his complaint. ECF No. 11 at 29. The court granted Amusat's request and ordered him to amend his complaint. ECF No. 30. In the same order, the court warned, "The amended complaint shall address all of the deficiencies identified in the

pending motion to dismiss[,]" and "[f]uture requests for leave to amend to address deficiencies already identified will be denied." *Id.* at 2.

Amusat timely filed his Second Amended Complaint (SAC), which is the operative pleading in this case. ECF No. 33. The SAC contains one federal claim—violation of Section 1681s-2(b) of the Fair Credit Reporting Act (FCRA)—and four state law claims—breach of accord and satisfaction, unconscionability, violation of the Texas Deceptive Trade Practices Act (DTPA), and promissory estoppel. *Id.* Amusat pleads that the court has federal question jurisdiction over his FCRA claim and supplemental jurisdiction over his state-law claims. *Id.* ¶¶ 4–5.

According to the SAC, Amusat financed his purchase of a used car in January 2024. ECF No. 33 ¶¶ 7. The financing contract (the Contract) was assigned to Santander. *Id.* According to the Contract's terms, the loan's annual percentage interest rate was 20.56%. *Id.* ¶ 8. However, Santander reduced the rate to 19.91%, resulting in a reduction of Amusat's monthly payment. *Id.* at 2. Amusat concedes that the Contract provides for a negotiable interest rate. *Id.* ¶ 9. However, he states that those terms were not "orally explained or highlighted" to him. *Id.* He further alleges that Santander did not provide him with any documentation explaining the reduction in the interest rate or in his payments, and it did not ask him to consent to the modified terms. *Id.* ¶ 11. As of June 2025, Amusat had paid $7,930 on the vehicle loan. *Id.* ¶ 12.

According to Amusat, in October 2024, he made a payment on the loan that was twice the amount of his required monthly payment. ECF No. 33 ¶ 12. Then, in June 2025, Amusat tendered a "settlement payment" to Santander, which "represented

approximately 10% of the remaining principal balance."[1] ECF No. 33 ¶¶ 14–15.

Amusat states that after receiving the alleged settlement payment, Santander sent him two letters. ECF No. 33 ¶¶ 20, 22. The letters stated, in relevant part, that Amusat's "settlement payment" was applied to his past-due balance, and that it had brought the account current. *Id.*; *see also id.* ¶ 43. Santander subsequently notified Amusat that it intended to accelerate the loan and demanded payment of $1,049.02. *Id.* ¶ 24.

Amusat asserts that Santander reported to consumer credit reporting agencies (CRAs) that his account was delinquent. ECF No. 33 ¶¶ 12, 26, 28A. Citing Santander's July 2025 letter stating that the account had been brought current by his settlement payment, Amusat contends that his "account cannot simultaneously be current and delinquent . . . ." *Id.* ¶ 25; *see also id.* ¶ 44 ("[Santander] reported the account status as delinquent when [its] own records and written communications stated the account was current."). Based on that contention, in August 2025, Amusat filed written disputes with the CRAs. *Id.* ¶¶ 28A, 42A. The CRAs conducted a reinvestigation. *Id.* ¶ 28B. Amusat states that the reinvestigation results confirmed that Santander "had been notified" of his disputes, but "that the account continued to report as delinquent . . . ." *Id.* Accordingly, Amusat alleges that Santander violated Section 1681s-2(b) of the FCRA by "fail[ing] to conduct a reasonable investigation of the disputed information, fail[ing] to review all relevant information provided by the consumer reporting agencies[,] . . . and fail[ing] to modify, delete,

---

[1] The parties dispute the legal effect of the alleged settlement payment. For the purposes of this Memorandum and Recommendation (M&R), the court need not decide whether the alleged "settlement payment" constituted a valid accord and satisfaction of the debt. The court expresses no opinion on that matter, and nothing in this M&R should be construed as such.

or permanently block the reporting of the inaccurate delinquency information." *Id.* ¶¶ 28C, 42A. Amusat further pleads that Santander's alleged FCRA violation was willful because Santander received notice of Amusat's disputes, and it "knew or had reasonable cause to believe that its reporting was inaccurate . . . ." *Id.* ¶ 45. Amusat alleges that he suffered various injuries because of the violation, including credit-score decline and denial of credit. *Id.* ¶ 46.

Santander moved to dismiss Amusat's SAC for failure to state a claim. ECF No. 34. It reasserted its argument that the SAC failed to plead facts sufficient to support Amusat's claims, including Santander's alleged violation of Section 1681s-2 of the FCRA. *Id.* ¶ 23. In response to the Motion, Amusat addressed the pleading sufficiency of his FCRA claim in just one paragraph:

> SAC ¶ 43 alleges [an] objective factual inaccuracy—Santander reported the account as delinquent despite its own July 25, 2025 letter admitting [that] the payment brought the account current. An account cannot be simultaneously "current" and "delinquent." This factual contradiction satisfies pleading requirements.

ECF No. 35 ¶ 23.

***2. Rule 12(b)(6) Legal Standard***

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011); *see also Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 708 (S.D. Tex. 2002) ("[T]he court may not look beyond the four corners of the plaintiff's pleadings.").

Under Rule 12(b)(6), the court determines whether the plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

"A plaintiff need only plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). Only statements of *fact* are to be taken as true. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Conclusory allegations are "disentitled . . . to the presumption of truth." *Id.* at 681. Thus, the court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiffs." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.* at 556.

The court liberally construes pro se pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless doing so would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.").

***3. The court should dismiss Amusat's FCRA claim.***

Amusat's only federal claim against Santander is an alleged violation of Section 1681s-2(b) of the FCRA. Amusat alleges that Santander violated the Section when it "either failed to conduct any investigation at all, or conducted an unreasonably cursory investigation, and repeatedly verified the account as delinquent to all three consumer reporting agencies . . . ." ECF No. 33 ¶ 45. He states that his FCRA claim is not challenging the validity of the underlying debt, but rather "challenging patently incorrect factual reporting" in light of Santander's earlier letters stating that the account was current. *Id.*¶ 44. He also alleges that Santander failed to conduct a reasonable investigation because it continued to report the debt as delinquent. *Id.* ¶ 45. Santander argues that the SAC fails to sufficiently plead a cause of action under Section 1681s-2. ECF No. 34.

"When a credit reporting agency notifies a 'furnisher' of credit information of a consumer dispute, the furnisher must 'conduct an investigation,' 'report the results of the investigation,' and 'modify . . . delete . . . or . . . permanently block' any inaccuracies." *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431, at *2 (5th Cir. May 22, 2025) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)–(E)). A plaintiff who seeks "to recover

under the FCRA must plead sufficient facts to show a factual inaccuracy[.]" *Smith v. Experian Info. Sols., Inc.*, No. 26-0206, 2026 WL 1879684, at *2 (S.D. Tex. June 26, 2026). A credit entry may be "inaccurate" if "it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citing *Pinner v. Schmidt,* 805 F.2d 1258, 1258 (5th Cir. 1986)). A plaintiff must make a threshold showing that the reported information is inaccurate. *James v. Westlake Fin. Servs.*, No. 25-5563, 2026 WL 2516356, at *2 (S.D. Tex. July 24, 2026) (citing *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025)), *R. & R. adopted*, 2026 WL 2507733 (S.D. Tex. Aug. 24, 2026); *see also Smith v. Nat'l City Mortg.*, No. 09-0881, 2010 WL 3338537, at *15 (W.D. Tex. Aug. 23, 2010) (explaining that to establish a claim under Section 1681s-2(b), a plaintiff must allege that the complained-of information is "actually *inaccurate*" (emphasis in original)).

A claim under Section 1681s-2(b) also requires the defendant to have acted willfully or negligently. *Shultz*, 2025 WL 1467431, at *2. A willful violation occurs only when a defendant engages in willful misrepresentations or concealments. *Id.*

Amusat alleges that Santander "failed to conduct a reasonable investigation of the disputed information, failed to review all relevant information provided by the consumer reporting agencies[,] . . . and failed to modify, delete, or permanently block the reporting of the inaccurate delinquency information." ECF No. 33 ¶¶ 28C, 42A. Amusat states that he notified CRAs of his dispute. *Id.* ¶ 42A. He pleads that a CRA notified Santander of the dispute. *Id.* He pleads that Santander inaccurately reported to CRAs that his account was delinquent in July, August, September, and October 2025. *Id.* ¶ 43. Those

allegations do not satisfy the threshold requirement of pleading that Santander provided inaccurate information to the CRAs.

Amusat states that Santander sent him at least two letters, beginning in July 2025, stating that Amusat's alleged settlement payment in June 2025 brought his account current. He asserts that Santander continued to report to CRAs that his account was delinquent in July through October 2025. Amusat repeatedly asserts that "[a]n account cannot be simultaneously 'current' and 'delinquent.'" *E.g.*, ECF Nos. 33 ¶ 25, 35 ¶ 23. However, Amusat has not shown that the account was¸ in fact, *simultaneously* current and delinquent. Again, in June, Amusat tendered the "settlement" payment. In July, Amusat received a letter from Santander that the "settlement" payment had brought his account current—meaning that the account was current as of June, when the payment was tendered. In August, Amusat started disputing his credit reports. It is clear that after tendering the alleged settlement payment, he failed to make payments on the loan. He states:

> On September 3, 2025—40 days after [Santander's] written admission that the payment brought the account current—[Santander] sent [him] a *fourth* Notice of Intent to Accelerate [the loan,] demanding payment of $1,049.02 no later than September 18, 2025.

*Id.* ¶ 24 (emphasis added). This makes sense, given that Amusat's theory of the case is that he had "settled" his account in June 2025 and was not required to make any further payments.

Amusat did not sufficiently plead facts to establish that Santander reported inaccurate information by reporting that his account was delinquent. To the contrary, it is clear that the loan was brought current at one moment in time—when the "settlement" payment was tendered—but that the account fell back into delinquency because of Amusat's failure to make

subsequent payments. In other words, it does not follow from the fact that Amusat's account was "current" immediately after his "settlement" payment that the account remained current the following month. Moreover, even if his account was truly current in July through October of 2025, Amusat has not sufficiently pleaded that Defendants were willful or negligent in their reporting of his account's status. This is especially true, given the parties' disagreement about the effect of the "settlement" payment.

Amusat clarified that his FCPA claim does not serve to challenge the validity of the underlying debt. He stated that he only seeks to challenge "patently incorrect factual reporting"—the allegedly conflicting statement that the account had been brought current, while reporting that it was delinquent. Because Amusat has not shown that Santander reported inaccurate information to the CRAs, or that it did so negligently or willfully, he has failed to state a claim under the FCRA. Accordingly, his claim under the FCRA should be **DISMISSED with prejudice**.

***4. The court should decline to exercise supplemental jurisdiction over Amusat's state law claims.***

Having dismissed all federal claims over which the court has original jurisdiction, the court turns to Amusat's remaining state law claims. *See* ECF No. 33 (alleging claims of breach of accord and satisfaction, unconscionability, violation of the Texas DTPA, and promissory estoppel). The court has "an independent obligation to determine whether subject-matter jurisdiction exists[.]" *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 749 (5th Cir. 2020) (citation modified); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (stating that the court's obligation persists "even in the absence of a challenge from any party"). The court must therefore determine whether it has subject matter jurisdiction to consider the remaining claims.

Federal courts have federal question jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts may also have supplemental jurisdiction over state law claims "that are so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367. After dismissing federal claims, however, this court may choose not to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016) (quoting *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). The "general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." *Lamar Co. v. Miss. Transp. Comm'n*, 976 F.3d 524, 528 (5th Cir. 2020) (quoting *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009)). In deciding whether to exercise supplemental jurisdiction, the court considers the factors set forth in Section 1367 and "the common law factors of judicial economy, convenience, fairness, and comity." *Brookshire Bros.*, 554 F.3d at 601–02.

The court should decline to exercise supplemental jurisdiction over Amusat's remaining state law claims because this case is in its very early stages, discovery has been stayed (ECF No. 30 at 2), and the factors of judicial economy, convenience, fairness, and comity weigh against exercising jurisdiction. Accordingly, Amusat's remaining state law claims should be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

***5. Further leave to amend is denied.***

"Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). If the plaintiff seeks leave to amend, they "must give the court at least some notice of what . . . [their] amendments would be and how those amendments would cure the initial complaint's defects." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (citation omitted). The court may deny leave "[i]f the plaintiff does not provide a copy of the amended complaint [or] explain how the defects could be cured[.]" *Id.* (citation omitted).

The court declines to offer Amusat a further opportunity to amend his complaint. The court gave Amusat an opportunity to amend his complaint after Santander filed its first motion to dismiss. ECF No. 30 at 1–2. The court warned that "[f]uture requests for leave to amend to address deficiencies already identified will be denied." *Id.* at 2. Santander's original motion to dismiss identified the same deficiencies that they argue are present in the SAC. *Compare* Defs.' Mot. to Dismiss Pl.'s Am. Compl., ECF No. 9*, with* Defs.' Mot. to Dismiss Pl.'s SAC, ECF No. 34. Moreover, in response to the instant Motion, Amusat argued that his complaint is sufficient and did not request leave to amend. ECF No. 35 at 4. He did not explain how deficiencies in his SAC could be cured. The court concludes that Amusat either cannot, or will not, amend to overcome the inadequacies identified above. Further amendment would be futile. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("[A] district court acts within its discretion when

dismissing a motion to amend that is frivolous or futile.”). Accordingly, any request for leave to amend Amusat’s complaint is **DENIED**.

***6. Conclusion***

The court recommends that Santander’s Motion to Dismiss Amusat’s Amended Complaint, ECF No. 34, be **GRANTED in part**. The court recommends that Amusat’s sole federal cause of action—violation of FCRA Section 1681s-2(b)—be **DISMISSED with prejudice**. The court further recommends that Amusat’s remaining state law claims in this case be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on October 9, 2026.

Peter Bray
United States Magistrate Judge